UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONALD EARL POTTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 08 C 3297 |
| v. ) | |
| ) | Hon. Rebecca R. Pallmeyer |
| MICHAEL J. ASTRUE, COMMISSIONER, ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald Earl Potts claims that he is disabled by herniated discs in his lower back. He brought this action seeking review of the final decision of the Commissioner of Social Security denying his application for benefits under Title II of the Social Security Act. Plaintiff claims this decision is not supported by substantial evidence and applies an erroneous standard of law. Specifically, he alleges that the Administrative Law Judge failed to take account of all of his limitations when she posed a hypothetical question to the vocational expert and when she made findings concerning Potts's residual functional capacity. For the reasons set forth below, Plaintiff's motion is denied, Defendant's motion is granted, and the Social Security Administration's final decision is affirmed.

**FACTUAL BACKGROUND**

Potts was born on December 22, 1963, and was 40 years old at the time of the alleged disability onset date. (Record (hereinafter "R.") 15.) He is married and has two minor children. (R. 14.) He has an eleventh grade education and worked as a plumber until April 2004, when he hurt his back while at work. (*Id.*) He received a workers' compensation settlement (*Id.*), and has not

1

worked since his injury occurred. (R. 37.)

Potts was diagnosed as having herniated discs in the lower lumbar spine in April 2004. (R. 160.) He began medical treatment for the pain resulting from his condition in May 2004. (R. 164.) Epidural steroid injections and physical therapy led to some improvement. (R. 163, 165, 179.) A functional capacity assessment conducted in November 2004, six months after his injury, revealed that Potts had the ability to perform light to medium work at that time. (R. 165.) Potts's plumbing job is a heavy physical demand level occupation, however, and his capabilities fell below this level. (*Id.*) As of July 2005, a report from a treating orthopedic specialist showed that Potts had reached pre-injury status and could resume the functional activities he had performed prior to April 2004. (R. 14, 261.) This report observed that, contrary to the medical history Plaintiff had given the specialist, Plaintiff actually had longstanding back problems dating to the 1990s and that it appeared, based on MRI and X-ray evidence, that Plaintiff's April 2004 injury was simply "a temporary aggravation of an already known, symptomatic disease process." (R. 260.)

Potts is not under any active medical treatment. (R. 14.) He testified that he is scared of the possible side effects, and therefore takes medication only when he has serious flares, approximately once every eight weeks. (R. 37-38.) The only side effect from the medication that he reports is constipation. (R. 37.) He also performs daily exercises that he learned during physical therapy; he testified, "I do a TENS unit. I do a TENS ball. I have a cane. I have a Styrofoam roll. I have an exercise ball. All those things and the exercises that they taught me to do seem to keep [the pain] at bay." (R. 38, 49.) He has stated he cannot stand or sit for more than 30 minutes at a time. (R. 39.) On the advice of his doctors, Potts has refused surgery reportedly due to the risks of possible paralysis and an eighty percent chance of worsening his condition. (R. 47, 177, 179.)

Potts has no difficulties using his arms or hands. (R. 14.) He performs some household activities, such as cooking, making the bed, folding laundry, and doing dishes. (R. 40-41.) He asserts, however, that he cannot do a complete load of dishes because of the pain in his back. (R. 52.) He also stated that in order to relieve muscle spasms, he must constantly switch positions from sitting to standing and vice versa. (R. 51.) He attends some of his children's school activities as well as church. (R. 14.) He drives approximately three times a week. (R. 40.) He occasionally handles household finances and uses a computer every day for approximately 15 minutes. (R. 42-44.)

## PROCEDURAL HISTORY

On September 6, 2005,[1] Potts filed an application for a period of disability and disability insurance benefits, claiming he became disabled on April 12, 2004, due to degenerative disc disease and herniated discs in the lumbar spine. (R. 12, 81-83.) His claim was denied on December 7, 2005 (R. 60), and upon reconsideration on March 2, 2006. (R. 69.) Potts filed a timely request for a hearing on April 13, 2006 (R. 74), and testified at that hearing on September 12, 2007. (R. 31.)

Susan Entenburg testified as a vocational expert at the hearing. In response to a hypothetical posed by the Administrative Law Judge ("ALJ"), Entenburg testified that approximately 7,000 jobs in the Chicago metropolitan area are available for an individual of Potts's age, education, and work experience, who is limited to sedentary work with a sit/stand option at will. (R. 55-56.) She further testified that if such individual had to miss a day of work once every two months, this absence would be within tolerated limits. (R. 56.) She stated, however, in response to a hypothetical posed by Potts's counsel, that if an individual of such characteristics needed to take

---

[1] The Administrative Law Judge's decision states that Potts filed his application on August 15, 2005, (R. 10), but the application for disability benefits is dated September 6, 2005, (R. 81), and both Plaintiff and Defendant refer to this date in their motions.

3

an unscheduled ten- to fifteen-minute break every two hours, the jobs she previously identified would be eliminated. (R. 56-57.)

The ALJ rendered a decision on October 26, 2007, finding that Potts was not disabled within the meaning of the Social Security Act. (R. 17.) The ALJ found that even though Potts's medical condition constitutes a "severe" impairment, it does not preclude him from performing a significant number of sedentary jobs (with a sit/stand option at will) according to the testimony of the vocational expert. (R. 12-13.) The ALJ acknowledged that Potts's condition could reasonably produce the alleged symptoms, but found his statements concerning the intensity, persistence, and limiting effects of these symptoms not entirely credible. (R. 14.) Potts appealed and on April 9, 2008, the Appeals Council declined review, rendering the ALJ's decision final. (R. 2, 5.) Potts has therefore exhausted all administrative remedies. He filed this complaint on June 8, 2008.

## **DISCUSSION**

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Social Security Act. 42 U.S.C. § 405(g). The court's task is to determine whether the ALJ's factual findings are supported by substantial evidence. *Id.*; *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Castile*, 617 F.3d at 926 (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). In undertaking this task, the court may not engage in its own analysis of the evidence nor substitute its own judgment for that of the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Although this standard accords great deference to the ALJ's determination, the court "'must do more than merely rubber stamp the [ALJ's] decision.'" *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (alteration in original) (quoting *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).

4

The Social Security Administration has set forth a five-step sequential evaluation to determine whether a claimant is disabled, requiring the ALJ to consider (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment; (3) whether the claimant has an impairment that meets or equals one of the impairments listed in the SSA regulation; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). If the ALJ can make a conclusive finding at any step that the claimant either is or is not disabled, then he need not progress to the next step. *Id.* If the claimant makes it past step four, the burden shifts to the Commissioner to demonstrate that there are jobs in significant numbers in the national economy that the claimant can successfully perform. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

In this case, the ALJ proceeded through all five steps of the analysis. She concluded that Potts had not engaged in substantial gainful activity since the alleged disability onset date; that Potts's impairments were severe; that his impairments did not meet or medically equal one of those listed in the SSA regulation; and that he could not perform his past relevant work; but that there are jobs in significant numbers in the national economy that he could perform. (R. 12-13.) Before considering step four, the ALJ was required to determine Potts's residual functional capacity. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1) (explaining that an individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments). The ALJ made a determination that Potts has the residual functional capacity to perform sedentary work with a sit/stand option at will. (R. 13.)[2]

---

[2] Plaintiff does not challenge the ALJ's reliance on the vocational expert's testimony concerning the number of sedentary jobs that can accommodate an employee's need to sit or stand at will. The court notes that the Dictionary of Occupational Titles describes sedentary work as that which "involves sitting most of the time" and where "walking and standing are required only
(continued...)

Potts argues that the ALJ's finding of residual functional capacity failed to take into account evidence in the record regarding his need to take unscheduled ten- to fifteen-minute breaks every two hours to perform stretching exercises. (Pl.'s Mem. in Supp. of a Mot. to Reverse the Final Decision of the Commissioner of Social Security at 9-10.) He also argues that the ALJ erred at step five in failing to include this limitation in her hypothetical to the vocational expert. (*Id.*) No medical evidence in the record, however, suggests that Potts needs to take unscheduled breaks throughout the day to perform stretching exercises. Potts explained briefly that he performs physical exercises every day to alleviate his pain, but did not suggest that he needs to do so every two hours or that he performs them for fifteen minutes at a time. (*See* R. 38.) The ALJ is not required to incorporate Potts's unsubstantiated complaints into her hypothetical question. *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) ("The ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence.").

The ALJ did give weight to Potts's verbal assertions that he needed to constantly switch positions from sitting to standing and vice versa, and that his serious flare-ups occur once every eight weeks, including these limitations in her hypothetical. The ALJ could not have accounted for a limitation that was not properly articulated and substantiated in the record, however. The only instance in which the purported limitation makes any appearance in the record is when Potts's counsel asked the vocational expert what effects there would be on the sit/stand option jobs if a hypothetical individual had to take unscheduled ten- to fifteen-minute breaks every two hours to

---

(...continued)
occasionally." *Dictionary of Occupational Titles*, 1991 WL 688702 (4th ed. 1991). Similarly, Social Security Ruling 83-12 explains that "most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4 (1983). Because Plaintiff has not raised these issues, the court need not address the matter.

perform stretching exercises. This single verbal mention of an otherwise unsubstantiated condition is not enough to overturn the ALJ's properly substantiated conclusion. Absent any evidence in the record of the specific limitation that Potts now alleges, the ALJ properly did not include this limitation in her hypothetical to the vocational expert.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment [13] is denied and Defendant's motion for summary judgment [18] is granted. The final ruling of the Social Security Administration is affirmed.

ENTER:

Dated: March 13, 2012

_____
REBECCA R. PALLMEYER
United States District Judge